IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION



KENNETH D. WOODLEY and
BARBARA G. WOODLEY,

    PLAINTIFFS,

v.                                   CASE NO. CV-04-J-48-J

HOME DEPOT, U.S.A., INC., et al.,

    DEFENDANTS.

## MEMORANDUM OPINION

Pending before the court is defendant Home Depot's motion to dismiss or, in the alternative, for summary judgment (doc. 16), which the court deemed a motion for summary judgment (doc. 18). Defendant Home Depot also filed evidence and brief in support of said motion (doc. 17). The plaintiffs filed a "motion in response" to said motion[1] (doc. 22) and the defendant thereafter filed a reply (doc. 23). Having considered said pleadings, briefs and evidentiary submissions, the court finds as follows:

---

[1] The plaintiffs filed a document entitled "Plaintiffs' motion in response to defendant, Sun Belt General Contractor's motion to dismiss, or in the alternative motion for summary judgment"(doc. 22). At first glance, this seemed to be a response to a non-existent motion as defendant Sun Belt has not filed a motion to dismiss in this case. However, the court has taken said document as a response to defendant Home Depot's motion to dismiss as this seems to be what the plaintiff intended. The court stresses that said document filed by the plaintiffs is taken as a **response** to the pending motion to dismiss, although the plaintiffs called the document a "motion in response." The court does not believe any such pleading as a "motion in response" is envisioned by the Federal Rules of Civil Procedure.

The following facts are not in dispute and are taken from the parties' submissions to the court. On November 5, 2002, the City of Jasper rezoned 19 acres of real property owned by Esther L. Russell from residential use to business/commercial use. This property, adjacent to the Forest Park subdivision in Jasper, was then sold to defendant Home Depot. *See* plaintiffs' response at 1-2; defendant's brief in support at 1-2. Adjacent landowners, not including the plaintiffs, filed suit in state court to enjoin the rezoning. Thereafter, settlement negotiations were begun and the remaining landowners, including the plaintiffs, were invited to attend a meeting for this purpose. Plaintiffs' response at 2; defendant's brief at 2.

The remainder of the facts are disputed. The plaintiffs assert they were asked to sign, and did sign, an agreement for "hush money" which was non-binding and that could be revoked within twenty (20) days. Affidavit of Kenneth Woodley, ¶ 5. Within that time period, the plaintiffs changed their minds about the agreement and decided not to accept the "hush money." Affidavit of Woodley, ¶ 6. The plaintiffs assert they never saw the actual agreement. *Id.*, ¶ 7. They allege that, as a result of the construction of the defendant store, their own adjoining property has been subject to standing water, holes, mud, silt, dirt and other debris, trees and a fence knocked over, and dust in their home.. *Id.*, ¶ 8. Thereafter, the plaintiffs filed suit in state court for the state law claims of trespass (Count I), common law "channelization theory"

(Count II), tortious conduct (Count III), outrage (Count IV), and declaratory judgment that defendants trespassed on plaintiffs' property, causing damages (Count V). The plaintiffs did not bring any claims alleging fraud or fraudulent inducement. The defendants removed the case to this court based on diversity jurisdiction.

Defendant Home Depot asserts that it made numerous concessions on such things as delivery hours, store hours and perimeter fencing, as well as paying a sum of money into an escrow account, in exchange for the plaintiffs and other adjacent landowners releasing Home Depot from all claims arising up to the date of the settlement agreement and including any litigation claiming nuisance type actions arising from Home Depot operating a store on the premises in question. Defendant Home Depot asserts that the plaintiffs signed a confidentiality agreement and an agreement to be bound by the settlement agreement entered in the state court action to enjoin the rezoning (in which defendant Home Depot had intervened), on May 12, 2003. Defendant Home Depot asserts that the plaintiffs' claims are all barred by these agreements.

The plaintiffs argue that they never accepted the defendant's offer of settlement, and even if they had, defendant Home Depot materially breached the terms of that agreement. The plaintiffs further argue that even if the plaintiffs accepted the offer of settlement from Home Depot, they are not bound by it because of a failure of

consideration. They argue that, if a contract does exist, it was unconscionable at the time it was made and therefore unenforceable.[2] The plaintiff also argues that public policy prohibits contracting to prevent liability for negligence.

The court notes that the plain terms of the settlement agreement are not to prevent suits for defendant's future negligence. Rather, it bars all claims "up to the date of the settlement." Only known injuries and damages were within that agreement. Additionally, the plaintiff's failure to accept funds designated for them out of the escrow account does not affect the outcome of this case. Based on the terms of the agreement, the defendant made the funds available to plaintiffs.[3] Plaintiffs' subsequent decision not to accept those funds does not make the agreement

---

[2]The plaintiffs also make the following argument:

> Home Depot, U.S.A. alleges that the Plaintiffs should be bound by said agreement based on the contract, however, in Housing Authority of Birmingham District v. Morris, Supra, states that 'it is a well recognized general principle, founded on human experience, that, 'Agreements exempting persons from liability for negligence induces a want of car (sic).'"

The court is unable to decipher this argument. However, assuming the plaintiffs refer to *Housing Authority of Birmingham Dist. v. Morris,* 244 Ala. 557, 563, 14 So.2d 527, 531 (Ala. 1943), that case states, "Agreements exempting persons from liability for negligence induces a want of care, for the highest incentives to the exercise of due care rest in consciousness that a failure in this respect will fix liability to make full compensation for any injury resulting from the cause. It has therefore been declared to be a good doctrine that no person may contract against his own negligence."

[3]Because neither party has addressed those funds, the court can only assume the same are still available.

4

unenforceable for lack of consideration, as plaintiffs argue.[4] Hence, setting aside those two arguments of plaintiffs, the court now considers whether the plaintiffs are bound by the documents they signed.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates

---

[4] The court further notes that the plaintiffs do not dispute that the defendant accomplished all of the other terms it agreed to in exchange for the adjacent landowners signing releases.

the absence of genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party must demonstrate that there is a "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); Fed.R.Civ.P. 56(c).

"A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AL Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

### III. Legal Analysis

In the facts before this court, the question of whether the confidentiality and settlement agreements are binding turns on contract law basics. The plaintiffs essentially argue they were fraudulently induced to enter the confidentiality agreement and agreement to be bound, believing they were non-binding documents to receive

"hush money." However, the plaintiffs have not stated any cause of action based on any theory of fraud. Rather, they sue for the exact types of claims which the settlement agreement, to which the plaintiffs agreed to be bound, prohibit. Therefore, plaintiffs now argue they should not be bound by these documents.

The plaintiffs cannot prevail on any of their state law claims against Home Depot based on the facts before this court. Unless the plaintiffs can demonstrate some theory on which the documents in question should not be binding, the plaintiffs are bound by those documents. Plaintiffs' argument that they thought they were entering a non-binding contract to receive "hush money" is not sufficient. Clearly, plaintiffs are charged by law with reading what they signed before agreeing to be bound. The only means by which the plaintiffs could avoid being bound by the agreements would be to demonstrate that they were fraudulently induced to sign said agreements. As stated previously, the plaintiffs have plead no such claim.

Recognizing the plaintiffs' ability to amend the complaint and add a claim for fraudulent inducement, the court finds, had the plaintiffs so pleaded, the final outcome of their claims against defendant Home Depot would not change. To prevail on a claim of fraudulent inducement, the plaintiffs must show: (1) the defendant had a duty to speak the truth; (2) the defendant made a false representation of a material fact; (3) the plaintiff reasonably relied on the false representation; and (4) the plaintiff suffered

7

loss, harm, or damage as a proximate result of the false representation. *Jabour v. Aetna U.S. Healthcare, Inc.*, 2000 WL 303639, *7 (M.D.Ala.2000), citing *McGriff v. Minnesota Mut. Life Ins. Co.*, 127 F.3d 1410, 1414 (11th Cir.1997). The plaintiffs allege "[t]hey told us that this was "hush money" and that we had twenty (20) days form the date of the agreement to back out of it." Affidavit of Woodley, ¶ 5. Assuming this generic "they" refers to the defendant, and accepting this statement as true, the plaintiffs could not prevail on a claim of fraudulent inducement, if one had been so pleaded.

In *Foremost Insurance Company v. Parham*, 693 So.2d 409, 422 (Ala.1997), the Alabama Supreme Court explained that fraud must include the element of "reasonable" reliance.[5] *See e.g., Brushwitz v. Ezell*, 757 So.2d 423, 429-430

---

[5]The court in Foremost stated:

> After careful consideration, we conclude that the "justifiable reliance" standard adopted in *Hickox*, which eliminated the general duty on the part of a person to read the documents received in connection with a particular transaction (consumer or commercial), should be replaced with the "reasonable reliance" standard most closely associated with *Torres v. State Farm Fire & Casualty Co.*, 438 So.2d 757 (Ala.1983). The "reasonable reliance" standard is, in our view, a more practicable standard that will allow the factfinder greater flexibility in determining the issue of reliance based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties. In addition, a return to the "reasonable reliance" standard will once again provide a mechanism, which was available before *Hickox*, whereby the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms.

*Foremost Ins. Co. v. Parham*,693 So.2d 409, 421 (Ala.,1997)

(Ala.2000). In *Torres v. State Farm Fire & Casualty Co.,* 438 So.2d 757 (Ala.1983), to which standard the Alabama Supreme Court returned in *Foremost Insurance*, the Court explained that "[i]n order to recover for misrepresentation, the plaintiff's reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover." *Torres*, 438 So.2d at 759. The Court has further stated that "[u]nder *Foremost Insurance*, reliance can be declared unreasonable, as a matter of law, 'where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms' that clearly contradicted the alleged misrepresentations." *Massey Automotive, Inc. v. Norris,* 2004 WL 1475434, *5 (Ala.2004), citing *Foremost*, 693 So.2d at 421.

In the facts before this court, the plaintiff Kenneth Dale Woodley has submitted an affidavit which states:

> At some point during litigation, the remaining landowners and my wife and I were contacted and asked to attend a meeting and were later contacted to sign an agreement. We were told that by signing this agreement that none of us could be prevented from bringing a separate action. They also told us that this was "hush money" and that we had twenty (20) days from the date of the agreement to back out of it.

9

Affidavit of Woodley, ¶ 5.

> My wife and I attended several of the meetings and at all times voiced our opposition to the agreement because we never saw the actual agreement; we were just asked to sign a piece of paper that had a place for us and other individuals to sign.

Affidavit of Woodley, ¶ 7.

The document bearing the plaintiffs' signatures states as follows:

### AGREEMENT TO BE BOUND

> **The undersigned** as owner or owners of the equitable title to real property in the Forest Park area of Jasper, Alabama, adjacent to a lot described in Exhibit "A" to a Settlement Agreement between William B. Long (and others) and Home Depot U.S.A., Inc. ("Home Depot") dated on or about _____, 2003, **have executed a Confidentiality Agreement in form attached to said Settlement Agreement as Exhibit "D" thereto and have thereafter read said Settlement Agreement.** In consideration of monetary payments to which I or we undersigned as owners of adjacent real property would be entitled under said Settlement Agreement, **the undersigned separately and severally and jointly agree to be personally bound by said Settlement Agreement to the full extent as if I or we as undersigners were original signatories to the said Settlement Agreement**, and further agree that Home Depot is a third-party beneficiary or otherwise entitled to rely upon and enforce against the undersigned this Agreement to Be Bound.

Agreement to be Bound, dated May 12, 2003 (emphasis added). The plaintiffs also signed a document entitled "Confidentiality Agreement" which states in relevant part:

> [I]n consideration of learning the content of the proposed settlement and the possibility of benefitting therefrom, the undersigned owner or owners agree for a period of twenty years to maintain the strict confidence

required as stated above, agreeing further that if any of the undersigned owner or owners should violate the strict confidentiality required by this Agreement, such owner or owners shall forfeit or be liable to return all monetary benefits ...

Confidentiality Agreement, dated May 12, 2003.

Based on the foregoing, the court finds that the plaintiffs signed their names to a one page agreement which explicitly stated that they had read and agreed to be bound by the terms of the Settlement Agreement in question.[6] Taking the plaintiffs' affidavit as true, under the reasonable reliance standard the court cannot find that the plaintiffs acted as reasonably prudent persons exercising ordinary care, as they were charged to do under *Foremost Insurance*. Under the reasonable-reliance standard, "'if a consumer plaintiff, acting as a reasonably prudent person exercising ordinary care, would have discovered the "true facts" before acting on the alleged misrepresentation,

---

[6]The Settlement Agreement to which the plaintiffs agreed to be bound states:

Plaintiffs hereby release the Defendant, City of Jasper, Alabama, and Intervenor, Home Depot, separately and severally and jointly, from any and all claims, demands, disputes, complaints, grievances, or any other basis for any relief, that they or any of them may have against the City of Jasper, Alabama and/or Home Depot, up to the date of this Settlement Agreement, whether known or unknown, of whatever kind or type regardless of the basis therefore, including but not limited to matters asserted or which might have been asserted in the Litigation. Plaintiffs further agree and covenant that they will not hereafter at any time in the future sue or bring any action against Home Depot, or against the City of Jasper seeking for (or to compel) any action against Home Depot ... based on the theory that the Home Depot operation expected to commence as a home improvement store on the Subject Property ... [is an] actionable nuisance or are otherwise enjoinable or subject to any type of legal relief by virtue of their nature of operating hours or operating conditions thereof.

Settlement Agreement, ¶ 5.

11

then, as a matter of law, the plaintiff could not have relied on the misrepresentation.'" *Foremost,* 693 So.2d at 418 (quoting *Johnson v. State Farm Ins. Co.,* 587 So.2d 974, 977-79 (Ala.1991)).

"Under the reasonable-reliance standard, a judgment as a matter of law in favor of the defendant in a fraud case is appropriate where the party who claims fraud in the transaction was fully capable of reading and understanding the terms of the contract involved in the transaction, but instead blindly relied on the defendant's oral representations to the exclusion of written disclosures in the contract to the contrary." *Massey Automotive, Inc. v. Norris,* 2004WL 1475434, *2-3 (Ala.2004), *citing Foremost Ins. Co.,* 693 So.2d at 421. In *Foremost,* the Court stated that, "the trial court can enter a judgment as a matter of law in a fraud case ... where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms [that clearly contradicted the alleged misrepresentations]." *Gilmore v. M & B Realty Co., L.L.C.,* 2004 WL 1475424, *7 (Ala.2004), citing *Foremost,* 693 So.2d at 421.

Thus, assuming the plaintiffs had properly plead fraud, they fail on their burden to show reasonable reliance on an alleged misrepresentation. *See Waddell & Reed, Inc. v. United Investors Life Ins. Co.,* 2003 WL 21512990, – So.2d – , – (Ala.2003).

The plaintiffs cannot meet this burden. Assuming they read the documents bearing their signatures, they could not have reasonably believed they were signing a non-binding contract for "hush money." The Agreement to be Bound states that the undersigned have "read said Settlement Agreement." Plaintiffs' failure to read the documents they were signing does not excuse them from the terms of the document.[7] *See e.g., Safeway Insurance Complany of Alabama, Inc. v. Taylor*, 758 So.2d 523, 525 (Ala.2000) (stating that "a person who signs a contract document is on notice of the terms therein and is bound thereby, even if he or she fails to read the document"). Under Alabama law, the plaintiffs had a duty to know what they were signing. Their failure to do so does not excuse them from the agreements they entered.

### IV. Conclusion

Having considered the foregoing, the court is of the opinion the defendant's motion to dismiss or in the alternative for summary judgment, which the court deemed a motion for summary judgment, is due to be granted. By separate Order, the court shall **GRANT** the motion on the plaintiffs' claims. Judgment shall be granted in favor

---

[7] The court finds the plaintiff Kenneth Dale Woodley's statement in his affidavit that "we never saw the actual agreement; we were just asked to sign a piece of paper that had a place for us ..." to be questionable. The Agreement to be Bound is a one page document, containing a single paragraph of writing, which the plaintiffs and others signed on that same page. That agreement states that the signatories "read the Settlement Agreement."

of defendant Home Depot and against the plaintiffs as a matter of law. The plaintiffs' claims against defendant Sun Belt Contractors remain pending.

**DONE** and **ORDERED** this the ___8___ day of September, 2004.

_____
UNITED STATES DISTRICT JUDGE
INGE P. JOHNSON

14